FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2004 NOV 10  A 10: 26

U.S. DISTRICT COURT
DISTRICT OF MASS.

```
                            )
ANTHONY IVERY,              )
              Petitioner.   )
                            )
                            )
v.                          )      Civ. No. 04-12125-RWZ
                            )
                            )
UNITED STATES,              )
              Respondent.   )
```

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S PETITION FILED UNDER 28 U.S.C. § 2255 FOR ORDER AMENDING JUDGMENT IN A CRIMINAL CASE

Now comes the United States of America, by its attorneys, Michael J. Sullivan, United States Attorney, and Cynthia W. Lie, Assistant United States Attorney, and hereby opposes the petition filed by petitioner Anthony Ivery ("Ivery") under 28 U.S.C. § 2255 for an Order Amending Judgment In a Criminal Case.

Ivery's petition seeks to vacate his conviction and be re-sentenced due to the United States Sentencing Guidelines ("U.S.S.G.") retroactive change in oxycodone sentencing pursuant to U.S.S.G. Amendment 657 in November 2003.  Ivery seeks to somehow apply this change in oxycodone law to his cocaine base trafficking convictions to vacate his conviction and to receive a lower sentence, although it is unclear how.  While Ivery is correct in that the sentencing guidelines changed in 2003 for

1

oxycodone to correct proportionality issues in the sentencing of oxycodone trafficking offenses (disparities in oxycodone versus Oxycontin sentencing), this change was specific to oxycodone sentencing issues and had no application or relevance to cocaine base trafficking offenses.[1]  Accordingly, Ivery's § 2255 petition should be summarily dismissed.

## I. STATEMENT OF FACTS

On April 6, 2000, Ivery sold 1.5 grams of crack cocaine to a witness cooperating with the government at the Chapel Hill Housing Project in Plymouth, Massachusetts.  (Plea Tr., p. 16-18).  This transaction was audio-recorded, as was the phone call between the cooperating witness and Ivery when they arranged for the sale of this crack cocaine.  Id.

On April 13, 2000, Ivery sold 2.6 grams of crack cocaine to the cooperating witness who was accompanied by an undercover Drug Enforcement Administration Task Force Agent, Richard Ridlon.  Id.  Although Agent Ridlon was not an eye witness to the transaction, he drove in the car with Ivery and the cooperating witness to the location of the transaction in Plymouth, Massachusetts.  Id.  There, Ivery sold and handed the crack cocaine to the cooperating

---

[1] Moreover, no evidentiary hearing is necessary because defendant has failed in his burden of demonstrating its necessity. See United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993); United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978).

2

witness.  Id.  This transaction was audio-recorded, as was the phone call between the cooperating witness and Ivery when they arranged for the sale of this crack cocaine.  Id.

## II.  PROCEDURAL BACKGROUND

On September 7, 2000, a federal grand jury indicted Ivery, charging him with two counts of possession with intent to distribute cocaine base, stemming from the April 6 and April 13 transactions described supra.  On May 12, 2001, Ivery pleaded guilty, without a plea agreement, to these two counts.  The Probation Office calculated Ivery's guidelines sentencing range ("GSR") under U.S.S.G. §2D1.1(a)(3) and (c)(8). (Presentence Report, "PSR" ¶¶22-25).  The PSR concluded that Ivery's base offense level was 24, based upon the 4.1 grams of cocaine base Ivery sold to the UC.  Id.  Because Ivery admitted his involvement in the offenses charged, the PSR made a two-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a), resulting in a total offense level of 22. (PSR ¶¶20, 31-32).  The PSR also determined that Ivery fell within criminal history category VI (PSR ¶62), which resulted in a GSR of 84 to 104 months imprisonment, (PSR ¶138).

Ivery was sentenced on September 20, 2001.  The district court sentenced Ivery to the bottom of the applicable GSR, 77 months imprisonment.  Id. at 19.

3

## III.  ARGUMENT

### AMENDMENT 657 ADDRESSES OXYCODONE SENTENCING DISPARITIES AND HAS NO APPLICATION TO COCAINE BASE SENTENCING

U.S.S.G. Amendment 657, a retroactive amendment effective November 1, 2003, essentially changes the drug equivalency tables for oxycodone by sentencing for oxycodone offenses using the weight of the actual oxycodone instead of calculating the weight of the entire pill.  Thus, instead of equating 1 gram of oxycodone to 500 grams of marihuana, now the guidelines equate 1 gram of oxycodone (actual) to 6700 grams of marihuana.  The full text of Amendment 657 and the reason for the Amendment is attached to this Opposition.

> This amendment responds to proportionality issues in the sentencing of oxycodone trafficking offenses. Oxycodone is an opium alkaloid found in certain prescription pain relievers such as Percocet and OxyContin.  This prescription drug generally is sold in pill form and, prior to this amendment, the sentencing guidelines established penalties for oxycodone trafficking based on the entire weight of the pill. The proportionality issues arise (1) because of the formulations of the different medicines; and (2) because different amounts of oxycodone are found in pills of identical weight.

Amendment 657.

The Amendment has no relevance or application to cocaine base trafficking offenses or sentencing, as demonstrated by the text of the Amendment and the reasons for the Amendment. Therefore, Ivery's attempt to somehow apply Amendment 657 to his

4

cocaine base trafficking convictions is completely meritless.

Ivery's § 2255 petition should be summarily denied and dismissed.

### III.   CONCLUSION

For the foregoing reasons, Ivery's petition is meritless,

and should be summarily dismissed.

November 10, 2004

                        Respectfully Submitted,

                        MICHAEL J. SULLIVAN
                        UNITED STATES ATTORNEY

            BY:

                        Cynthia W. Lie
                        Assistant United States Attorney


### CERTIFICATE OF SERVICE

I, CYNTHIA W. LIE, Assistant United States Attorney, do
hereby certify that I have caused to be served a copy of the
foregoing to Anthony Ivery, Prisoner No. 23351-038, Federal
Correctional Institution-Gilmer; PO Box 6000; Glenville, West
Virginia 26351 by U.S. First Class Mail.

Dated: November 10, 2004

                        Cynthia W. Lie
                        Assistant United States Attorney

5

# UNITED STATES SENTENCING COMMISSION GUIDELINES MANUAL

## Appendix C -- Volume II



[Amendments to the *Guidelines Manual*
November 1, 1998, through November 5, 2003]

Finally, §5E1.2 (Fines for Individual Defendants) has been amended specifically to reflect fine provisions unique to the FECA. This part of the amendment also provides that the defendant's participation in a conciliation agreement with the Federal Election Commission may be an appropriate factor for use in determining the specific fine within the applicable fine guideline range unless the defendant began negotiations with the Federal Election Commission only after the defendant became aware that the defendant was the subject of a criminal investigation.

**Effective Date: The effective date of this amendment is November 1, 2003.**

657. **Amendment**: Section 2D1.1(c) is amended in Note (B) of the "*Notes to Drug Quantity Table" by adding at the end the following new paragraph:

"The term 'Oxycodone (actual)' refers to the weight of the controlled substance, itself, contained in the pill, capsule, or mixture.".

The Commentary to §2D1.1 captioned "Application Notes" is amended in Note 9 by striking "or " after "amphetamine,"; and by inserting ", or oxycodone" after "methamphetamine".

The Commentary to §2D1.1 captioned "Application Notes" is amended in Note 10, in the Drug Equivalency Tables, in the subdivision captioned "Schedule I or II Opiates*" by striking "1 gm of Oxycodone = 500 gm of marihuana" and inserting "1 gm of Oxycodone (actual) = 6700 gm of marihuana".

**Reason for Amendment:** This amendment responds to proportionality issues in the sentencing of oxycodone trafficking offenses. Oxycodone is an opium alkaloid found in certain prescription pain relievers such as Percocet and OxyContin. This prescription drug generally is sold in pill form and, prior to this amendment, the sentencing guidelines established penalties for oxycodone trafficking based on the entire weight of the pill. The proportionality issues arise (1) because of the formulations of the different medicines; and (2) because different amounts of oxycodone are found in pills of identical weight.

As an example of the first issue, the drug Percocet contains, in addition to oxycodone, the non-prescription pain reliever acetaminophen. The weight of the oxycodone component accounts for a very small proportion of the total weight of the pill. In contrast, the weight of the oxycodone accounts for a substantially greater proportion of the weight of an OxyContin pill. To illustrate this difference, a Percocet pill containing five milligrams (mg) of oxycodone weighs approximately 550 mg with oxycodone accounting for 0.9 percent of the total weight of the pill. By comparison, the weight of an OxyContin pill containing 10 mg of oxycodone is approximately 135 mg with oxycodone accounting for 7.4 percent of the total weight. Consequently, prior to this amendment, trafficking 364 Percocet pills or 1,481 OxyContin pills resulted in the same five year sentence of imprisonment. Additionally, the total amount of the narcotic oxycodone involved in this example is vastly different depending on the drug. The 364 Percocets produce 1.8 grams of actual oxycodone while the 1,481 OxyContin pills produce 14.8 grams of oxycodone.

The second issue results from differences in the formulation of OxyContin. Three different amounts of oxycodone (10, 20, and 40 mg) are contained in pills of identical weight (135 mg). As a result, prior to this amendment, an individual trafficking in a particular number

of OxyContin pills would receive the same sentence regardless of the amount of oxycodone contained in the pills.

To remedy these proportionality issues, the amendment changes the Drug Equivalency Tables in §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) to provide sentences for oxycodone offenses using the weight of the actual oxycodone instead of calculating the weight of the entire pill. The amendment equates 1 gram of actual oxycodone to 6,700 grams of marihuana. This equivalency keeps penalties for offenses involving 10 mg OxyContin pills identical to levels that existed prior to the amendment, substantially increases penalties for all other doses of OxyContin, and decreases somewhat the penalties for offenses involving Percocet.

**Effective Date: The effective date of this amendment is November 1, 2003.**

658.    **Amendment:** Section 2L1.2(b)(1)(A)(vii) is amended by striking "committed for profit".

The Commentary to §2L1.2 captioned "Application Notes" is amended in Note 1 by striking subdivision (A)(iv) as follows:

"(iv)    If all or any part of a sentence of imprisonment was probated, suspended, deferred, or stayed, "sentence imposed" refers only to the portion that was not probated, suspended, deferred, or stayed.",

and inserting the following:

"(iv)    Subsection (b)(1) does not apply to a conviction for an offense committed before the defendant was eighteen years of age unless such conviction is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted.".

The Commentary to §2L1.2 captioned "Application Notes" is amended in Note 1 by striking subdivision (B) as follows:

"(B)    Definitions.—For purposes of subsection (b)(1):

(i)    'Committed for profit' means committed for payment or expectation of payment.

(ii)    'Crime of violence'—

(I)    means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and

(II)    includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

– 397 –